181 F.3d 1113 (9th Cir. 1999)
 AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff-Appellee,
v.
GEORGE KRIEGER, Defendant,
and
PLAYSCOOL PRODUCTIONS; TODD ZWEIG PRODUCTIONS, Defendants-Appellants,
TODD ZWEIG, individually dba Playscool Productions, Defendant-counterclaim-3d-party-plaintiff-Appellant.
CNA/AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Counter-defendant-Appellee,
v.
ASSICURAZIONI GENERALI S.P.A.; ROYAL SURPLUS LINES; ALLIED SPECIALTY INSURANCE; SAN DIEGO ENTERTAINMENT, INC., Third-party-defendants-Appellees.
ASSICURAZIONI GENERALI, Intervenor-Appellee.
 No. 97-55926
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted: December 8, 1998
Decided: June 29, 1999
 
 David W. Baumgarten, San Diego, California, for the defendants-appellants.
 Laura E. Hogan, Hawkins, Schnabel, Lindahl & Beck, Los Angeles, California, for the plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California. Judith M. Keep, Chief District Judge, Presiding. D.C. No. CV-94-00478-JNK/LSP.
 Before: Robert Boochever, A. Wallace Tashima and Kim McLane Wardlaw, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Todd Zweig appeals the district court's entry of summary judgment in a declaratory judgment action brought by American Casualty Company. The district court held that the insurance company had no duty to indemnify or defend Zweig in a tort action stemming from a bungee jumping accident. We affirm in part and reverse in part.
 
 FACTS
 
 2
 Todd Zweig ("Zweig") did business as Playscool Productions, which promoted and produced "roaming nightclub" events in San Diego County, including an annual major event known as "Playscool" and held at the San Diego Sports Arena. Live bands, disc jockeys, fashion shows and other entertainment appeared at Playscool.
 
 
 3
 In 1992, George Krieger ("Krieger"), who promoted and staged bungee jumping demonstrations, contacted Zweig about performing at the Sixth Annual Playscool. Zweig agreed on the condition that he be named as an "additional insured" under Krieger's insurance policy.
 
 
 4
 Krieger was insured by American Casualty Company of Reading, Pennsylvania ("American Casualty") under a general liability policy. Krieger's insurance broker, Charles Morton, president of Sports and Entertainment Insurance Services ("SEIS"), procured insurance through American Casualty's underwriters, AON Entertainment, Ltd. ("AON"), for a number of bungee jumper clients, including Krieger. Krieger contacted Morton/SEIS and asked for additional certificates of insurance. Morton/SEIS prepared and gave to Krieger two separate forms entitled "Certificate of Insurance." Both forms named Krieger as the insured. In a "Special Items " category, one listed the City of San Diego and the Sports Arena ("San Diego") as "Additional Insureds." The other certificate, in issue in this appeal, listed (among others) Todd Zweig and Playscool Productions as additional insureds in the "Special Items" category. Krieger gave the certificate to Zweig.
 
 
 5
 On October 2, 1992, while rehearsing for the Playscool event, two of Krieger's bungee jumpers, Anthony Forcier ("Forcier") and Lisa Machado ("Machado"), got their bungee cords tangled following a "tandem jump." When Krieger attempted to untangle them, the two jumpers fell forty feet to the floor of the Sports Arena and were seriously injured.
 
 
 6
 On June 15, 1993, Forcier and Machado filed suit in San Diego Superior Court to recover for their injuries against Zweig, Krieger, San Diego, and others. Zweig tendered his defense to San Diego's insurer, Assicurazioni Generali, SPA ("Generali"), as well as to American Casualty, contending he was an "additional insured" under Krieger's liability policy.
 
 
 7
 American Casualty denied coverage in a letter dated September 13, 1993, stating:
 
 
 8
 Please be advised that neither Mr. Zweig nor Playskool [sic] Productions is listed as an additional insured on the policy which Mr. Krieger carried with CNA/American Casualty of Reading, PA for the period of this loss. In addition, we have already advised our insured that there is no coverage for him for this loss. His policy contained an endorsement specifically excluding coverage for injuries to any person while rehearsing or practicing for, participating in or traveling to or from any sport or athletic event that the insured conducts, produces, promotes or sponsors. We have also notified the attorney representing the plaintiffs that there is no coverage for this loss.
 
 
 9
 Zweig then sent American Casualty a copy of the certificate of insurance naming him as an "additional insured." On September 30, 1993, American Casualty again wrote that Krieger's policy did not cover injuries to any person rehearsing or practicing for a sport or athletic event, and added:
 
 
 10
 For the same reason that there is no coverage for the Named Insured, there is, likewise, no coverage for any additional insured, added by certificate or any person or entity who claims coverage under an "insured contract."
 
 
 11
 Krieger did not respond to the state court complaint, and in April 1994 a default judgment was entered against him in the amount of $ 6.4 million. The state suit against Zweig and the other defendants went to trial in February 1995. In March 1995, a jury returned a special verdict finding (1) Krieger was reckless; (2) Zweig was not negligent; but (3) the bungee jumping came under the "peculiar risk" doctrine, as it was "likely to create a special risk of bodily harm to others unless special precautions were taken," and Zweig should have recognized that it was likely to create such a risk. On May 19, 1995, the state court entered judgment in favor of Forcier and Machado against Zweig only, for approximately $ 4.2 million, holding that no recovery could be had against San Diego.
 
 PROCEDURE
 
 12
 In addition to his appeal of the district court's grant of summary judgment holding that Zweig was not an "additional insured," Zweig argues that the district court abused its discretion in exercising jurisdiction over American Casualty's declaratory judgment suit. We therefore set forth in some detail the procedure followed in the district court.
 
 
 13
 On March 28, 1994, before the state court suit went to trial, American Casualty filed the federal suit that is the basis for this appeal: a diversity action (American Casualty is a Pennsylvania corporation) for declaratory relief against Krieger, Forcier, Machado, Zweig and others in the United States District Court for the Southern District of California. The complaint requested a declaratory judgment that American Casualty had no duty to defend or indemnify any defendant for the bungee jumping injuries.
 
 
 14
 On April 12, 1994, Zweig filed a state court suit against American Casualty, Generali, and San Diego in San Diego Superior Court, alleging breach of contract and breach of the implied covenant of good faith and fair dealing against the insurers, and breach of contract against San Diego. Zweig also requested declaratory relief.
 
 
 15
 The complaint in the federal action was not served on Zweig until May 21, 1994, after Zweig had filed his state court action. Zweig answered and filed counterclaims against American Casualty, for breach of contract and breach of the implied covenant of good faith and fair dealing. At the same time, Zweig dismissed his state court action. Forcier and Machado answered the complaint and filed counterclaims against American Casualty, and also filed a motion to dismiss and/or stay the action, which the district court denied as moot.
 
 
 16
 In December 1994, American Casualty filed a motion for summary judgment on the ground that an endorsement to the policy explicitly excluded coverage for injury to "any person while rehearsing or practicing for, participating in, or traveling to or from any sport or athletic contest/event that you [Krieger] conduct, produce, promote, or sponsor." Zweig and the other defendants opposed the motion, arguing that the bungee jumping demonstration was not a "sport or athletic contest/event." The district court denied the motion, because "the policy terms are ambiguous as they pertain to bungee jumping," leaving triable issues of material fact regarding whether the policy covered the event in which Forcier and Machado were injured. The court did, however, grant summary judgment to American Casualty regarding the bad faith counterclaims, because the company's interpretation of the policy was not arbitrary or unreasonable and therefore not made in bad faith.
 
 
 17
 In February 1995, Forcier, Machado, and Krieger filed a motion for summary judgment on the ground that American Casualty owed them a duty to defend, as the district court had determined that there were factual issues regarding the coverage of American Casualty's policy. Zweig attempted to join this motion in March 1995, but the court denied his motion for joinder as untimely under a local rule.
 
 
 18
 In March 1995, Krieger, Forcier, and Machado moved for reconsideration of the district court's order granting American Casualty summary judgment on the bad faith counterclaims. American Casualty moved for summary adjudication of the counter-claimants' prayers for punitive damages.
 
 
 19
 The court denied Krieger, Forcier, and Machado's motion for reconsideration, and also denied their motion for summary judgment on the duty to defend. The court held that "the potential for liability does not turn on disputed facts, but rather on the legal question of whether the undisputed facts fall under the 'sports participant exclusion' of American Casualty's policy."
 
 
 20
 In May 1995, more than a year after American Casualty filed the declaratory relief action in the district court, defendants Forcier, Machado, and Krieger filed a motion to dismiss the action for lack of jurisdiction. The court denied the motion in July 1995, and denied a renewed motion in February 1996. The court decided to continue to exercise its discretionary jurisdiction under the Declaratory Judgment Act, noting that the defendants were "engaging in one of the most conspicuous examples of forum shopping in the court's experience."
 
 
 21
 At the order of the district court during the pretrial conference, the parties subsequently attended a global settlement conference in state court. Zweig's insurer, Generali, refused to offer its policy.[1] Forcier, Machado, and Krieger reached a settlement with American Casualty, and later stipulated to a dismissal with prejudice of all claims between them.
 
 
 22
 At the continued pretrial conference in federal court (reduced to two defendants, Zweig and San Diego), Zweig asserted that the court should not exercise jurisdiction, although he later withdrew the request for dismissal. The court nevertheless reexamined its retention of jurisdiction, concluding that it could retain it because Zweig still had a pending counterclaim for breach of contract.
 
 
 23
 In March 1997, American Casualty filed a motion for summary judgment, arguing that Zweig and San Diego were not covered under the policy because the certificates of insurance issued by Morton, Krieger's broker, were not authorized by and did not bind American Casualty. The court granted the motion, holding that Morton was not an agent of American Casualty, and that American Casualty owed no duty to defend or indemnify Zweig or San Diego, as neither was an "additional insured" under the policy.
 
 
 24
 Zweig appeals.
 
 DISCUSSION
 I. Retaining jurisdiction
 
 25
 This court reviews the district court's decisions regarding the propriety of hearing actions for declaratory relief for an abuse of discretion. See United Nat'l Ins. Co. v. R&D Latex Corp., 141 F.3d 916, 918-19 (9th Cir. 1998) (as amended) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289-90, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)). This is because "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district courts'] grasp." Wilton, 515 U.S. at 289.
 
 
 26
 The Declaratory Judgment Act, 28 U.S.C. 2201(a), states
 
 
 27
 In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
 
 
 28
 (Emphases added.) The case must be "within its jurisdiction," i.e., there must be an independent basis for the court's jurisdiction. But even though the district court has jurisdiction, it is not required to, but rather "may" declare the rights of the parties:
 
 
 29
 a district court may decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper. . . . "Congress. . . created an opportunity, rather than a duty, [for a district court] to grant a new form of relief to qualifying litigants. . . . The normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."
 
 
 30
 Snodgrass v. Provident Life and Accident Ins. Co., 147 F.3d 1163, 1166 (9th Cir. 1998) (per curiam) (citations omitted) (quoting Wilton, 515 U.S. at 288).
 
 
 31
 In this case, diversity of citizenship was the independent basis for jurisdiction in the district court. Zweig argues that the district court abused its discretion in taking the "opportunity" to entertain the declaratory relief action.
 
 
 32
 Zweig's first contention, that the court abused its discretion by failing to consider its jurisdiction at the outset of the litigation, because it was bound to consider the circumstances only as of the time of commencement of the suit, is foreclosed by this court's recent en banc decision in Government Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998). In Dizol, the en banc court held that the district court was not under a sua sponte obligation to consider whether to decline jurisdiction at the outset of an action for declaratory relief. Id. at 1224. In his reply brief, Zweig acknowledges that Dizol is fatal to his claim that automatic reversal is required where the court does not address whether or not to retain jurisdiction at the outset. Nevertheless, Zweig continues to assert that the decision to retain jurisdiction was an abuse of discretion.
 
 
 33
 The "philosophic touchstone " for the district court in considering whether to exercise its discretion to retain jurisdiction over a declaratory judgment action lies in the factors enumerated by the Supreme Court in Brillhart v. Excess Ins. Co., 316 U.S. 491, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942). See Dizol, 133 F.3d at 1225. "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Id.
 
 
 34
 Avoiding needless determination of state law issues. When "parallel state proceedings involving the same issues and parties [are] pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." Id. In this case, it is true that Forcier and Machado's state court action was pending when American Casualty filed the federal declaratory judgment action in March 1994; judgment against Zweig in the state case was returned over one year later, in May 1995. But Forcier, Machado and Krieger did not raise the federal jurisdictional issue until they filed a motion to dismiss on May 19, 1995, the same day that final judgment against Zweig was entered in the state court case. Under Dizol, the district court had no obligation to raise the issue of jurisdiction sua sponte, and the court was entitled to evaluate the motion to dismiss under the circumstances existing at the time the issue was raised rather than at the time of filing. Id. at 1224. Therefore, at the time that the district court was first confronted with the jurisdictional issue, there was no "parallel state proceeding" in the state trial court to create a presumption that the case should be heard in state court. Moreover, as the district court noted, the state tort case did not involve the same legal issues as the federal declaratory action, which centered on the coverage dispute rather than liability issues.
 
 
 35
 Because the state court case did not include the coverage issue, and because the coverage issue in the federal action was not contingent on any further state court proceedings, the district court found good cause to continue to exercise its jurisdiction. This is not a case in which the district court was faced with a request for "needless determination of state law issues," id. at 1225, and the district court did not abuse its discretion in deciding that this first Brillhart factor weighed in favor of retention of jurisdiction.
 
 
 36
 Discouraging forum shopping. This factor usually is understood to favor discouraging an insurer from forum shopping, i.e., filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action. In this case, although the district court noted that American Casualty could have had its rights determined in the state court suit and therefore might have been forum shopping, the court concluded that the defendants were the major offenders:
 
 
 37
 This court finds a countervailing "forum shopping" consideration here as well: that of preventing the Defendants, who have not fared well in the three summary judgments in this action, from wiping the slate clean and starting this litigation anew in state court on the eve of their federal court trial. Providing Defendants with a "second bite at the apple" in state court would be unjust to Plaintiff at this late juncture, and would constitute a significant waste of both state and federal judicial resources.
 
 
 38
 Considering the circumstances confronted by the court at the time the motion for dismissal was before it, this decision was not an abuse of discretion.
 
 
 39
 Avoiding duplicative litigation . When Forcier, Machado and Krieger filed their motion to dismiss in federal court, the state court litigation had concluded without deciding the coverage issue before the district court in the declaratory relief action. The federal court action was not duplicative. And as the district court noted, the waste of judicial resources inherent in duplicative litigation would occur not if the federal action continued, but if it were dismissed:
 
 
 40
 Jettisoning the litigation at this stage to recommence in state court would work an injustice on the parties and would squander the considerable efforts expended by this court to date.
 
 
 41
 The record in this case is voluminous, the procedural history is convoluted, and the district court worked long and hard. We conclude that dismissal, not retention, would implicate the waste of judicial resources, and the district court was well within its discretion so to conclude.
 
 
 42
 Independent claims. In this case, the district court was faced not only with American Casualty's request for declaratory relief, but also with counterclaims filed by the defendants, including Zweig's counterclaim for bad faith breach of contract.
 
 
 43
 When other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract . . . ), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief. Claims that existindependent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule. They invoke the virtually unflagging obligation of the district court to hear jurisdictionally sufficient claims.
 
 
 44
 Snodgrass, 147 F.3d at 1167 (citations and internal quotations omitted). Zweig's claims "would continue to exist if the request for a declaration simply dropped from the case." Id. at 1168. Although the counterclaim named nondiverse parties (San Diego), American Casualty states in its brief that Zweig never served his counterclaim on anyone but American Casualty, and therefore Federal Rule of Civil Procedure 4(m) would require that the action be dismissed as regards the unserved defendants. The presence of counterclaims that exist separate from the declaratory judgment action, and over which the district court has independent diversity jurisdiction, therefore also militate in favor of the district court's retention of jurisdiction.
 
 
 45
 We hold that the district court did not abuse its discretion in declining to dismiss the declaratory judgment action.
 
 II. Summary judgment
 
 46
 Because we hold that the district court did not abuse its discretion in retaining jurisdiction over the declaratory judgment action, we now determine whether the district court's summary judgment rulings were correct under California law, which governs this diversity action. This court reviews the district court's decision on a state law issue de novo. See Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir. 1997), amended, 136 F.3d 1208 (9th Cir. 1998), cert. denied, 119 S. Ct. 161 (1998). Summary judgment is also reviewed de novo. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).
 
 A. Additional insured
 
 47
 The district court held that Zweig failed to raise a triable issue of fact regarding whether he was an "additional insured" under Krieger's policy with American Casualty.
 
 1. American Casualty's complaint
 
 48
 Zweig contends that American Casualty was not entitled to summary judgment on this issue because the complaint did not allege that he was not an additional insured. The complaint stated:
 
 
 49
 17. Plaintiff is informed and believes that the remaining Defendants . . . [including Zweig] contend or otherwise allege that the claims made against them are covered under the terms of the subject liability insurance policy and that said Defendants are entitled to indemnification, defense and/or compensation for any all [sic] loss which may be sustained as a result of the litigation filed against them.
 
 
 50
 18. Plaintiff contends that it has no duty to defend or indemnify any defendant herein in reference to any injury suffered by ANTHONY FORCIER or LISA MACHADO during the October 2, 1992 bungee jump based on the same "sporting event" exclusion.
 
 
 51
 19. Plaintiff desires the judicial declaration of its rights and duties under the policy and the declaration that the policy does not afford coverage to Defendants for bodily injury and that Plaintiff has no duty to defend or indemnify Defendants in connection with any related claim.
 
 
 52
 The complaint thus identified the issue as whether American Casualty had a duty to defend or indemnify Zweig, among others, although it states that the claims should fail under the "sporting event" exclusion rather than specifically referring to the "additional insured" issue which applies to Zweig. Zweig was on notice, however, that American Casualty denied coverage or a duty to defend, and under Federal Rule of Civil Procedure 8(a)(2) only "a short and plain statement of the claim showing that the pleader is entitled to relief " is required. Further, in its answer to his counterclaim, American Casualty raised as an affirmative defense that "Zweig fails to qualify as an 'insured' within the meaning of any policy allegedly issued by American Casualty." [Id. at 79] The complaint's allegations, as clarified by the answer to the counterclaim, were adequate.
 
 2. Waiver
 
 53
 Zweig contends that American Casualty waived the additional insured issue when it "conceded" that Zweig was an additional insured in its letter dated September 30, 1993. The district court stated that American Casualty "did no such thing," and we agree. On September 13, 1993, a letter from American Casualty advised Zweig that "neither Mr. Zweig nor Playskool [sic] Productions is listed as an additional insured on the policy which Mr. Krieger carried. . .." In further correspondence on September 30, American Casualty stated that because of the sport or athletic event exclusion, it was denying coverage to "our insured," Krieger. On that basis, it was denying coverage to "any additional insured, added by certificate or any person or entity who claims coverage under an 'insured contract.' " Even if the September 13 letter did not exist, the September 30 letter does not constitute a waiver of the argument that Zweig was not an additional insured. See Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 900 P.2d 619, 636 (Cal. 1995) ("a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial").
 
 3. Ostensible agency
 
 54
 Zweig contests the district court's ruling that he was not an "additional insured" because Morton/SEIS, who issued the certificate of insurance on which Zweig relies, was not American Casualty's "ostensible agent." As the court noted, Zweig apparently conceded that Morton/SEIS was not the actual agent of American Casualty, and thus had no actual authority to issue the certificate of insurance naming Zweig as an additional insured. Morton/SEIS was an insurance broker who procured insurance for his clients, not an agent of any particular insurance company. See Marsh & McLennan of Cal., Inc. v. City of Los Angeles, 62 Cal. App. 3d 108, 132 Cal. Rptr. 796, 802 (Ct. App. 1976) ("An independent insurance broker is not an agent of the insurer, but rather is an agent of the insured."). The court concluded that Zweig had failed to raise a triable issue of fact whether Morton/SEIS was an "ostensible agent" of American Casualty.
 
 
 55
 "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code 2300. To establish a triable issue of fact that Morton/SEIS was American Casualty's ostensible agent, Zweig had to produce some evidence that American Casualty, not Morton/SEIS, "intentionally or by want of ordinary care has caused or allowed [Zweig] to believe the agent possesses such authority . . . . Ostensible authority must be established through the acts or declarations of the principal and not the acts or declarations of the agent." Preis v. American Indem. Co., 220 Cal. App. 3d 752, 269 Cal. Rptr. 617, 622-23 (Ct. App. 1990). In general, ostensible authority is "for a trier of fact to resolve . . . . [It] should not . . . [be] decided by an order granting a summary judgment." Thompson v. Occidental Life Ins. Co., 276 Cal. App. 2d 559, 81 Cal. Rptr. 37, 40 (Ct. App. 1969).
 
 
 56
 Zweig presented no evidence that he had any direct contact with American Casualty or AON, its underwriter, before the bungee jumping accident. That does not end our inquiry, however. American Casualty could still be liable "where the principal knows that the agent holds himself out as clothed with certain authority, and remains silent." Preis, 269 Cal.Rptr. at 623.
 
 
 57
 In Preis, the court held that the defendant insurance company gave its own certificate of insurance forms to the broker who issued the certificate, thus creating at least a triable issue of fact whether the broker had ostensible authority. Id. at 623. By contrast, in this case the certificate was a standard form in wide use in the insurance industry, issued by the Acord Corporation. American Casualty's name is not printed on the form. American Casualty, however, does not have its own customized form certificate for indicating additional insureds. American Casualty argues that because the form used is a standard form, there is no evidence that American Casualty performed any acts or made any declarations to make Zweig believe that Morton/SEIS was authorized to add him as an insured.
 
 
 58
 There was evidence in the record, however, that American Casualty knew that Morton/SEIS issued certificates of insurance. Morton testified that he fielded requests on many occasions for additional certificates of insurance. The record also contains facsimile correspondence between Morton/SEIS's office and AON, American Casualty's underwriter, forwarding Krieger's initial application for insurance, and requesting the policy number by return fax "so that I may issue necessary Certificates for the first jump this weekend." There thus was evidence that AON (who is admittedly the agent of American Casualty) knew that Morton was planning to issue certificates of insurance before particular jumps took place.
 
 
 59
 American Casualty counters that it generally required an additional fee, reviewed proposed certificates, and issued an endorsement to the policy before adding an additional insured. While the certificate states that its policy names Zweig as an additional insured, it also indicates "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." That evidence, however, goes only to the question whether Zweig actually was added to the policy as an additional insured (which the parties agree he was not). It is not relevant to whether Morton/SEIS had ostensible authority to issue the certificates, which, while not formal amendments to the policy, were used as the notification to insureds that they were covered. Thus, there was evidence in the record from which a reasonable juror might infer that AON was aware of Morton's practice of using standard form certificates in this fashion. If AON remained silent in the face of such knowledge, it may be held responsible under the ostensible agency theory.
 
 
 60
 There is also evidence that American Casualty knew that Morton/SEIS issued certificates of insurance to Krieger, that Morton/SEIS used the standard form, and that the standard form certificates were issued to others as proof that they were covered under the policy. There is thus a question of fact whether, because American Casualty knew that Morton/SEIS held itself out as authorized to issue standard form certificates of insurance on American Casualty's behalf, American Casualty conveyed the impression to one named as an additional insured that these certificates reflected an actual amendment to the policy.
 
 
 61
 There is no dispute that Krieger obtained his bungee jumping insurance from American Casualty through Morton/SEIS. Once the policy was issued by American Casualty at Morton's request, there was a triable issue of fact whether Morton/SEIS was an ostensible agent of American Casualty for the purpose of Krieger's obtaining an additional insured endorsement to that policy. An insurance company that issues a policy through the services of a broker may create an ostensible agency whereby the broker would have apparent authority to add an additional insured to that policy. There is a triable issue whether by issuing the policy at Morton/SEIS's request, American Casualty made Morton/SEIS an ostensible agent for the limited purpose of adding an additional insured to that policy.
 
 
 62
 Stated another way, it is arguable that one who has obtained insurance through a broker would ask the same broker to have an additional insured covered by the policy. There is a triable issue of fact whether the insurance company, having issued the policy at the request of that broker, has clothed the broker with ostensible authority to add an additional insured to that policy.
 
 
 63
 We thus conclude that Zweig raised an issue of material fact regarding ostensible agency.
 
 B. Duty to defend
 
 64
 Zweig argues that the district court erred in determining that American Casualty did not have a duty to defend him. As American Casualty points out, however, he did not join the motion for summary judgment which was filed by Forcier, Krieger, and Machado regarding American Casualty's duty to defend. The district court noted that Zweig's motion to join was late under a local rule, and that his status as an additional insured was still in question; the court denied the motion for joinder. Zweig does not assert that the district court was in error in refusing to allow him to join.
 
 
 65
 Zweig therefore did not raise in the district court whether American Casualty had a duty to defend him. The district court considered whether American Casualty had a duty to defend Krieger, discussing the "sports participant" exclusion in the policy. In his brief on appeal, Zweig addresses the issue whether the bungee jumping was a "sport or athletic event." This issue may have been relevant to Krieger's motion; it is undisputed that Krieger was an insured and had raised the issue of the duty to defend. By contrast, Zweig was neither established as an insured, nor did he make an argument why American Casualty had a duty to defend him. We therefore do not address the issue, as the district court did not consider the duty to defend as it applies to Zweig.
 
 C. Bad faith and punitive damages
 
 66
 The district court granted summary judgment to American Casualty on Zweig's counterclaim for bad faith because it was ambiguous whether the "sport or athletic contest/event" language in the policy applied to bungee jumping, and American Casualty was therefore not unreasonable in denying coverage.
 
 
 67
 [A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage.
 
 
 68
 Lunsford v. American Guar. and Liability Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994) (applying California law) (citation omitted). In this case, the district court concluded that American Casualty's actions were based on a reasonable construction of the policy. Therefore it did not act in bad faith and was entitled to summary judgment on that claim. Id. Zweig has not shown that American Casualty's construction of the policy was unreasonable, and we affirm the grant of summary judgment on the bad faith claim.
 
 
 69
 If the insurer did not act in bad faith, punitive damages are unavailable: "Punitive damages may be awarded when the insurer breaches the covenant of good faith and fair dealing and is guilty of oppression, fraud or malice." Id. (quotations omitted). We also affirm the grant of summary judgment on the claim for punitive damages.
 
 CONCLUSION
 
 70
 We affirm the district court's decision to retain jurisdiction over the declaratory judgment action. We affirm the rulings on summary judgment, except for the ruling that there was no material question of fact whether Morton/SEIS had ostensible authority to add Zweig to Krieger's policy as an additional insured. We remand for further proceedings on that issue.
 
 
 71
 Each side should bear its own costs on appeal.
 
 
 
 NOTE:
 
 
 [1]
 Generali apparently later agreed to defend Zweig on appeal and to satisfy the judgment against him.