HOBBS REALTY & CONSTRUCTION COMPANY, JAMES O. HOBBS, AND JAMES S. HOBBS, PLAINTIFFS v. SCOTTSDALE INSURANCE CO., DEFENDANT

No. COA03-514

(Filed 16 March 2004)

### Insurance— commercial liability policy—coverage—rented property—invasion of the right of private occupancy

Summary judgment was improperly granted for defendant commercial general liability insurer in an action to determine coverage of a lawsuit arising from a realtor's denial of the keys to a rented beach house to the 20-year old daughter of the renter, with an accompanying racial remark. The proper inquiry under the policy language is whether there is a legally enforceable right to assume control of the property rather than an actual assumption of control. Here, the allegations sufficiently stated a possessory right such that the alleged refusal to provide the key raised the possibility of liability and thus imposed the duty to defend.

Appeal by plaintiffs from order entered 29 January 2003 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 28 January 2004.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Joseph H. Nanney, Jr., and Kathleen A. Naggs, for plaintiff-appellants.*

*Anderson, Daniel & Coxe, by Bradley A. Coxe, for defendant-appellee.*

LEVINSON, Judge.

This appeal arises from the parties' dispute over coverage provided by a commercial general liability insurance policy issued by defendant to plaintiffs. Plaintiffs appeal from an order granting summary judgment in favor of defendant insurer. We reverse.

### The Underlying Lawsuit

Plaintiff Hobbs Realty & Construction Company (Hobbs Realty) is a North Carolina general partnership comprised of two general partners—plaintiff James O. Hobbs (James), and his son James S. Hobbs (Jimmy). Plaintiffs are in the business of renting beach property in Holden Beach, North Carolina. On 30 October 2000 plaintiffs

herein were named as defendants in a lawsuit filed against them by Harvey Bynum (Bynum), his daughter Loren Bynum (Loren), and his wife Frances Solari (Solari). The factual allegations of that complaint included, in pertinent part, the following:

1. Plaintiffs [in the underlying lawsuit] . . . are husband and wife[.]

2. Mr. Bynum is Black; Ms. Solari is White.

3. [Loren] was born May 14, 1978 and is bi-racial.

. . . .

14. . . . [Bynum and Solari] planned to take [Loren] and three of her friends to Holden Beach . . . October 2, 1998[.]

15. . . . Ms. Solari telephoned Hobbs Realty to rent a [house] . . . for the weekend of October 2-3, 1998.

16. . . . [Solari] paid in full and in advance by credit card.

. . . .

18. Ms. Solari related to the reservation agent that this would be her daughter's last beach trip for a long while . . .

19. The reservation agent instructed Ms. Solari that, after business hours, the key to the unit would be in the night pick-up box located near the front door of Hobbs Realty.

20. At no time did the reservation agent suggest in any way that Plaintiffs' use and possession of the unit was contingent upon arriving . . . before a certain time or date, that Ms. Solari alone was authorized to take the key from the night pick-up box, that Ms. Solari alone was authorized to assume possession of the unit, or that [Loren] was not authorized to take possession of the unit unless she was accompanied by Ms. Solari.

21. . . . [Loren] invited three friends to join Plaintiffs at Holden Beach . . . [including] Specialist Travis Askridge, who is Black. . . .

. . . .

24. Mr. Bynum and Ms. Solari were delayed in Durham and planned to join Ms. Bynum and her friends Saturday morning October 3, 1998. . . . .

27. When [Loren] arrived at . . . Hobbs Realty at approximately 11:30 p.m., the key to the unit was not in the night pick-up box as promised.

26. [Loren] followed the written instructions posted on the front of Hobbs Realty and telephoned Defendant James Hobbs to secure a key to the unit.

29. Upon his arrival at Hobbs Realty, Defendant James Hobbs . . . refused to give [Loren] a key to the unit[.]

30. Defendant James Hobbs told [Loren] it was the policy of Hobbs Realty not to rent to "unsupervised teenagers."

31. As proof of their ages, [Loren] and her companions offered their respective identifications to Defendant James Hobbs.

32. Defendant James Hobbs . . . refused to look at the identifications . . .

33. [Loren] explained . . . that her parents Mr. Bynum and Ms. Solari would arrive in Holden Beach the next morning, and offered to call Mr. Bynum on her cellular phone for confirmation.

34. Defendant James Hobbs told [Loren] "There's no use to call anyone. I'm not giving you the key."

35. As he turned away from [Loren] and her companions, Defendant James Hobbs said he had no intention of renting to "ni---rs."

. . . .

40. . . . Mr. Bynum spoke with Defendant James Hobbs by telephone.

41. Mr. Bynum explained . . . that he and Ms. Solari would arrive in . . . a few hours [] and that [Loren] was twenty years of age.

. . . :

44. Defendant . . . again . . . refused to allow [Loren] to take possession of the unit.

45. Neither the vacation brochure . . . nor [the] standard rental contract makes any reference to a practice or policy of Hobbs Realty to deny occupancy to persons below a certain age.

Based on these and other allegations, plaintiffs in the underlying lawsuit asserted claims for race discrimination, in violation of 42 U.S.C. § 1981 and § 1982; unfair or deceptive trade practices, in violation of N.C.G.S. § 75-1.1; and civil conspiracy, in violation of 42 U.S.C. § 1985(3) and N.C.G.S. § 99D-1. Those original plaintiffs sought compensatory and punitive damages for "economic loss, personal injury, emotional distress, and great mental anguish."

## Hobbs v. Scottsdale Lawsuit

The present appeal arises from a suit brought by plaintiffs (defendants in the underlying action) against Scottsdale Insurance Company, challenging the insurer's refusal to defend or indemnify them in the underlying lawsuit.

The parties do not dispute that at the time of the events alleged in the underlying suit plaintiffs had in force a general commercial liability policy issued by defendant. The policy provided, in relevant part, coverage for the following losses: (1) damages for bodily injury and property damage if such damage were caused by an "occurrence," defined in the policy as an accident; and (2) damages for "personal injury," defined in the policy to include injury, other than bodily injury, arising from "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies[.]"

The complaint in the underlying lawsuit was filed on 30 October 2000. On 22 December 2000 defendant informed plaintiffs that it would neither defend plaintiffs in the lawsuit, nor indemnify them for liability arising from the suit, on the basis that the policy did not provide coverage for the acts alleged in the Bynum complaint. In its correspondence with plaintiff, defendant took the position that the "conduct alleged is of a voluntary, deliberate nature, so it could not be construed as an 'occurrence' " and thus that coverage for bodily injury or property damage is excluded by the terms of the policy. Defendant also contended that the acts alleged in the underlying complaint did not constitute "invasion of the right of private occupancy" of a rental property.

On 18 January 2002 plaintiffs filed suit against defendant, seeking a declaratory judgment that defendant was required to provide a defense under the terms of the policy, an order directing defendant to defend and indemnify them in the underlying lawsuit, and compensatory and punitive damages for breach of contract, bad faith refusal to defend and indemnify, unfair competition, and unfair and deceptive

HOBBS REALTY & CONSTR. CO. v. SCOTTSDALE INS. CO.

[163 N.C. App. 285 (2004)]

trade practices. Defendant filed a motion for summary judgment on 1 October 2002, which was granted by the trial court on 29 January 2003. From this order, plaintiffs appeal.

### Standard of Review

Plaintiffs appeal from an order of summary judgment in favor of defendant. Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2003). "On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law." *Guthrie v. Conroy*, 152 N.C. App. 15, 567 S.E.2d 403, 408 (2002) (citations omitted).

In the instant case, neither party challenges the accuracy or authenticity of the subject insurance policy, or the existence of any relevant facts. Rather, the parties' arguments are based on their respective interpretations of the terms of the insurance policy. Consequently, the record does not present a genuine issue as to any material fact. We next consider whether either party was entitled to judgment as a matter of law.

---

The issue presented by this appeal is whether defendant insurer has a duty to defend or indemnify the insured plaintiffs in the underlying lawsuit. "An insurer has a duty to defend when the pleadings state facts demonstrating that the alleged injury is covered by the policy[.]" *Penn. Nat'l Mut. Cas. Ins. Co. v. Associated Scaffolders & Equip. Co.*, 157 N.C. App. 555, 558, 579 S.E.2d 404, 407 (2003). Thus:

> An insurance company has a duty to defend its insured against a suit brought by a third party claimant, . . . if in such suit the third party claimant alleged facts which, if true, imposed upon the insured a liability to the claimant within the coverage of the insured's policy. The court must then compare the complaint with the policy to see whether the allegations describe facts which appear to fall within the insurance coverage.

*Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, 84, 323 S.E.2d 726, 729-30 (1984), *reversed on other grounds*, 315 N.C. 688, 340 S.E.2d 374 (1986) (citation omitted). "Accordingly,

an insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 242 (4th Cir. 1995). Moreover:

> When pleadings allege multiple claims, some of which may be covered by the insurer and some of which may not, the mere possibility the insured is liable, and that the potential liability is covered, may suffice to impose a duty to defend. Any doubt as to coverage is to be resolved in favor of the insured.

*Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 735, 504 S.E.2d 574, 578 (1998) (citing *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 n.2, 693, 340 S.E.2d 374, 377 n.2., 378 (1986) (citation omitted)). Finally, in construing an insurance policy, the "various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder." *Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

We next consider whether the Bynum/Solari complaint alleges acts that give rise to defendant insurer's duty to defend. The insurance policy at issue herein provides two types of coverage, "A" and "B." The issue raised by this appeal is whether Coverage B applies to the allegations of the complaint.[1] Coverage B provides coverage for "personal injury" which the policy defines, in pertinent part, as follows:

> "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
>
> . . . .
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; . . . .

---

1. The parties do not dispute that coverage A, insuring property damage and bodily injury arising out of an "occurrence," or accident, does not apply to the facts of this case, inasmuch as the complaint alleges only intentional, willful acts by the Hobbs defendants.

HOBBS REALTY & CONSTR. CO. v. SCOTTSDALE INS. CO.

[163 N.C. App. 285 (2004)]

No North Carolina cases have previously addressed the scope of insurance coverage for "invasion of the right of private occupancy." The parties to this appeal advance conflicting interpretations of the coverage provided for personal injury by this policy. Plaintiffs assert that the complaint alleges an invasion of the Bynum's **right** of private occupancy. Plaintiffs also argue that the phrase "invasion of the right of private occupancy" is inherently ambiguous, and therefore should be interpreted in favor of coverage.

Defendant, on the other hand, focuses on the modifier phrase "that a person occupies" and argues that the addition of this phrase to "invasion of the right of private occupancy" serves to deny insurance coverage where plaintiffs in the underlying lawsuit have not physically occupied the premises when the alleged injury occurred. On this basis, defendant contends that without physical occupancy of the subject property, there can be no "invasion of the right of private occupancy of a . . . premises *that a person occupies.*" We disagree.

Appellate analysis of the phrase "invasion of the right of private occupancy," whether or not it is modified by the additional clause "that a person occupies," has generally focused on whether the plaintiff's status is such that the factual allegations of the complaint might be an "invasion of the right of private occupancy" of the subject property by the plaintiff. Defendant argues that insurance coverage requires physical residence or "occupancy" by the plaintiff. However, none of the cases cited by defendant draw such a narrow distinction. Instead, they interpret the policy language to exclude coverage if the plaintiff has no possessory interest, or **right** to occupy, the subject property. For example, appellate cases have denied coverage where the underlying plaintiff alleged deprivation of the right to enter into a housing contract. *See, e.g., Powell v. Alemaz, Inc.*, 335 N.J. Super. 33, 760 A.2d 1141 (2000), wherein the Court held that an insurance policy with the same language as that in the instant case did not cover prospective tenants' allegations of racial discrimination by rental agent:

"Unquestionably [plaintiff] had no 'right' of 'private occupancy'— no 'right' to occupy the apartment she applied for. Though she was entitled not to be discriminated against in her application, that is not at all the same as a 'right' to occupy: an enforceable claim to occupancy[.]" . . . By . . . adding the phrase, "that a person occupies," to the definition, it can no longer be seriously argued that the phrase, "or invasion of the right of private occu-

pancy," includes actions for personal injuries arising from racial discrimination to prospective tenants.

*Id.* at 42-43, 760 A.2d at 1146-47 (quoting *Martin v. Brunzelle*, 699 F. Supp. 167, 170 (N.D. Ill. 1988)).

The parties cite no cases, and we have found none, in which the underlying plaintiffs allege tortious behavior occurring *after* obtaining a possessory right to the subject property, but *before* plaintiffs have physically moved in. However, the appellate jurisprudence interpreting the phrase "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies" have generally distinguished between plaintiffs who own or rent a property, and those who are merely **prospective** tenants, but have not entered into a contract, signed a lease, or otherwise obtained possessory rights to the subject property. We agree with this distinction and conclude that the proper inquiry is not whether a party has physically assumed control of the property, but whether he has obtained a legally enforceable *right* to do so. *See, e.g., United States v. Security Mgmt. Co.*, 96 F.3d 260, 265 (7th Cir. 1996):

> Simply put, coverage is extended to that category of cases which involve the invasion of a person's right of private occupancy. . . . We agree . . . [that] the "that a person occupies" portion of the definition[] does not add much clarity to the clause. We . . . read it as merely attempting to refine the nature of the prerequisite "right" of private occupancy. . . . We believe that a reasonable insured would read the language as excluding cases where the aggrieved individual was not possessed of an existing right of private occupancy.

Ambiguity in the terms of an insurance policy is resolved in favor of the insured:

> The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company. However, ambiguity in the terms of an insurance policy is not established . . . unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend.

*Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citation omitted).

**HOBBS REALTY & CONSTR. CO. v. SCOTTSDALE INS. CO.**

[163 N.C. App. 285 (2004)]

We conclude that "[a] reasonable reading of the insurance policy could produce either the reading offered by plaintiff or the reading offered by defendants; therefore, the policy is ambiguous." *Scottsdale Ins. Co. v. Travelers Indem. Co.*, 152 N.C. App. 231, 234, 566 S.E.2d 748, 750 (2002). Because the phrase "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies" is ambiguous, the "ambiguity in the policy language must be resolved against the insurance company and in favor of the insured." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990).

Mindful of the principle that ambiguities are to be resolved in favor of providing coverage, we hold that the phrase "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies" includes situations wherein a party suffers injury after he has entered into a contract for possession of realty and thus has gained a "**right of**" private occupancy, even if he has not yet assumed physical possession of the property. The gravamen of the Bynum/Solari complaint is that (1) the plaintiffs rented a house from defendants; (2) they were told that a key would be left at the house; (3) no restrictions were imposed regarding Solari's allowing a family member or any other person to obtain the key if that person arrived at the beach house before Solari; and (4) when their biracial adult daughter and three friends, including an African American man, arrived in Holden Beach defendants refused to give her a key to the premises, and employed a racial epithet.

We conclude that the allegations of the complaint sufficiently allege a possessory right to the rental house by members of the Bynum/Solari family such that the alleged refusal to provide a key to Solari's adult daughter raises a "possibility the insured is liable and . . . suffice[s] to impose a duty to defend." *Penn. Nat'l*, 157 N.C. App. at 558, 579 S.E.2d at 407.

We conclude the trial court erred by granting summary judgment in favor of defendant. Accordingly, the trial court's order of summary judgment is

Reversed.

Judges HUNTER and McCULLOUGH concur.