**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WANDA A. SELL, individually and as Trustee of the Nancy A. Muhs Trust, Plaintiff - Appellant, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant - Appellee. | No. 11-15492 DC No. 2:09 cv-1584 GEB MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted July 19, 2012
San Francisco, California

Before:     TASHIMA, CLIFTON, and MURGUIA, Circuit Judges.

Plaintiff Wanda Sell is a trustee and senior beneficiary of a trust that

includes a ranch.  Rigoberto Ocegueda is a residual beneficiary of the trust.

Ocegueda filed a petition in state court seeking an order removing Sell as trustee

---

        [*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

and directing the trustee to provide him with possession and control of the ranch. In the petition, Ocegueda alleged that Sell failed to meet the trust's conditions to receive the ranch. There is no evidence that Ocegueda had been physically present on or physically possessed the ranch since the trust was established. The trust held liability coverage on the ranch (as part of a Farmowner's Policy) with Defendant Nationwide Insurance Company ("Nationwide"). The policy provides endorsements for both personal and advertising injury liability and property damage.

Sell tendered defense of Ocegueda's suit to Nationwide. Nationwide refused to defend the suit. Sell then sued Nationwide in California state court in her personal capacity and in her capacity as trustee. Nationwide removed the case to federal court under 28 U.S.C. § 1441(b).[1] Sell alleges breach of contract and breach of the implied covenant of good faith and fair dealing; she seeks damages and declaratory relief. The district court granted summary judgment to Nationwide. Sell timely appealed.

---

[1] The parties are diverse and the amount in controversy requirement for diversity jurisdiction is met.

2

We review the district court's grant of summary judgment de novo and apply the substantive law of California. *Conestoga Servs. Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 980-81 (9th Cir. 2002). We reverse in part.

**1.** The trust's policy includes coverage for claims of personal injury resulting from "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." This language is part of a standard form comprehensive general liability policy. Nationwide argues that Ocegueda's claim is not covered because he did not physically possess the ranch. We hold that it is at least ambiguous that the policy covers Ocegueda's claim. *See Bank of the W. v. Super. Ct.*, 833 P.2d 545, 552 (Cal. 1992).

Nationwide does not dispute that if the policy did not include the limitation "that a person occupies," that under California law the policy could implicate invasions of more than just the right of possessory occupancy. Indeed, many cases interpreting the "right of private occupation" without the "occupies" limitation have held that the right of private occupation provides liability protection for claims alleging a broad range of interferences. *See, e.g., Martin Marietta Corp. v.*

3

*Ins. Co. of N. Am.*, 47 Cal. Rptr. 2d 670, 683 (Ct. App. 1995) (requiring coverage of actions against insured to remediate groundwater and other environmental contamination); *State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F. Supp. 1165, 1168 (C.D. Cal. 1989) (requiring coverage of actions based on racial discrimination claim brought by prospective tenants against insured).

Nationwide argues that the addition of the phrase "that the person occupies" to the policy is sufficient under California law to unambiguously require actual physical possession by the third-party claimant. A North Carolina court has rejected this argument. *See Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co.*, 593 S.E.2d 103, 108 (N.C. Ct. App. 2004). In that case, the third-party claimants had acquired a *right* to occupy the premises by acquiring a lease, but never actually occupied the premises because the insured refused to provide them with a key to gain entry into the premises, allegedly for racially discriminatory reasons. *Id.* at 105. The court held that "the proper inquiry is not whether a party has physically assumed control of the property, but whether he has obtained a legally enforceable *right* to do so." *Id.* at 108. Similarly, a California Court of Appeal has explained that the "occupies" limitation "clarif[ies] that the wrongfulness of the ejection must consist in, or attach to, an invasion of the *right of* occupation." *Zelda, Inc. v. Northland Ins.* Co., 66 Cal. Rptr. 2d 356, 364 (Ct. App. 1997) (emphasis added);

Hon H. Walter Croskey et al., Rutter Grp., California Practice Guide: Insurance Litigation ¶ 7:1073.3 (2011) (defining "occupies" in the limitation as "the person had the *right* to occupy real property, as owner or tenant"). We conclude that it is at least arguable that the "occupies" limitation does not require the third-party to physically possess the property.

Although this policy defines "unoccupancy" or "unoccupied," this definition is insufficient to establish that "occupies" or "occupancy" requires a third party's physical possession.

Nationwide also argues that the "occupies" limitation is rendered redundant if it is interpreted to not require physical possession. We disagree because other courts have identified several possible meanings of this clause. One possible explanation is that the "occupies" phrase is included to unambiguously exclude suits brought by *prospective* residents asserting racial discrimination in housing. *See Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000); *Kings Pointe Apts. v. State Farm Fire & Cas. Co.*, 145 F.3d 1331, 1998 WL 279371, at *2 n.1 (6th Cir. 1998) (unpublished table decision). Another rational explanation is that the phrase clarifies "that the offense would only apply to landlord-tenant disputes" and not to "suits by neighboring landowners for nuisance and trespass claims." Matthew Bender, California Insurance Law & Practice §

5

49.60 (2012). The Seventh Circuit has commented that the "occupies" phrase attempts "to refine the nature of the prerequisite 'right' of private occupancy" to "exclude[] at least unapproved sub-lessees." *United States v. Sec. Mgmt. Co., Inc.*, 96 F.3d 260, 265 (7th Cir. 1996). We need not decide which of these meanings, if any, is correct; we provide these illustrations to demonstrate that Nationwide's reading is not the only reasonable interpretation to avoid making "occupies" surplusage.

**2.** Because Nationwide had a duty to indemnify under the policy's personal liability coverage, Nationwide had a duty to defend. *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993) ("[T]he duty to defend is broader than the duty to indemnify.").

**3.** The property damage section of the insurance policy explicitly protects only property damage which is caused by an "accident." "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured." *Delgado v. Interins. Exch. of the Auto. Club of S. Cal.*, 211 P.3d 1083, 1088 (Cal. 2009). To determine whether an act was an accident, the relevant question is whether the insured intended to "commit the act giving rise to liability," not whether the insured intended "to cause the consequences of that act." *Collin v.*

6

*Am. Empire Ins. Co.*, 26 Cal. Rptr. 2d 391, 403-04 (Ct. App. 1994). Sell does not identify any accidental conduct on her part. Therefore, the property damage section of the policy does not provide liability coverage for Ocegueda's claim.

4.      Sell alleges breach of the implied covenant of good faith and fair dealing and seeks punitive damages. An insurer does not act in bad faith if it withholds benefits based on a legitimate dispute as to liability. *Am. Cas. Co. of Reading, Pa. v. Krieger*, 181 F.3d 1113, 1123 (9th Cir. 1999) (applying California law); *Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 440 (Ct. App. 1994). Because we hold that it was ambiguous whether the policy covered Ocegueda's claim, we further hold that Nationwide's refusal to cover the claim was not in bad faith. Because Nationwide did not act in bad faith, "punitive damages are unavailable." *Am. Cas. Co.*, 181 F.3d at 1123.

Accordingly, we reverse the district court's grant of summary judgment to Nationwide on the breach of contract claim and hold that Nationwide has a duty to defend and to indemnify the trust under the policy's coverage for personal and advertising injury liability. We affirm the district court's grant of summary judgment to Nationwide on Sell's bad faith claim and request for punitive

7

damages. Plaintiff-appellant shall recover her costs on appeal from defendant-appellee.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

*Sell v. Nationwide Insurance Co.*, No. 11-15492

CLIFTON, Circuit Judge, dissenting in part:

I respectfully dissent, in part. I conclude that Plaintiff Wanda Sell is not entitled to coverage under the insurance policy in question, issued by Defendant Nationwide Mutual Insurance Company, and thus I would affirm the judgment of the district court in full.

Sell should not be entitled to coverage under the "personal injury" provision. The relevant language provides coverage for claims of personal injury resulting from "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."

There was simply no "eviction," "entry," or "invasion" (wrongful or not) into "the right of private occupation of a room, dwelling or premises that a person occupies" here, or any claim that such an event occurred. The person whose space was allegedly invaded was Rigoberto Ocegueda, and there was no evidence or basis to infer that he ever physically occupied the ranch or any part of it, as the majority acknowledges, at 2.

But, the majority reasons, the policy language might be sufficiently ambiguous to provide coverage against a "right of occupation" even if that right never involved actual occupancy. That strikes me as an excessively tortured

construction of the language, simply inconsistent with "eviction," "entry," "invasion," or "that a person occupies." A claim that language is ambiguous does not prove that it is.

The majority's reading appears to rest entirely upon the decision in *Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co.*, 593 S.E.2d 103, 107 (N.C. Ct. App. 2004) ("[T]he phrase 'invasion of the right of private occupancy of a room, dwelling or premises that a person occupies' have generally distinguished between plaintiffs who own or rent a property, and those who are merely *prospective* tenants, but have not entered into a contract, signed a lease, or otherwise obtained possessory rights to the subject property. We . . . conclude that the proper inquiry is not whether a party has physically assumed control of the property, but whether he has obtained a legally enforceable *right* to do so.") I am not persuaded that a California court would reach the same conclusion.

My doubt is especially strong in the circumstances here, for the facts of *Hobbs Realty* were unlike the facts in our case. At issue in that case was a claim by a tenant who had entered into a lease to possession of premises. The North Carolina court emphasized that "[t]he parties cite no cases, and we have found none, in which the underlying plaintiffs allege tortious behavior occurring *after* obtaining a possessory right to the subject property, but *before* plaintiffs have

physically moved in." *Id*. at 108. *Hobbs Realty* quoted *United States v. Security Mgmt. Co.*, 96 F.3d 260, 265 (7th Cir. 1996), that "a reasonable insured would read the language as excluding cases where the aggrieved individual was not possessed of an existing right of private occupancy."

Ocegueda "was not possessed of an existing right of private occupancy," so the policy language should be read to exclude his claim. Ocegueda did not allege he had an existing possessory right to the property that Sell had "invaded," causing him some personal injury. Rather, he contended that Sell herself was not entitled to possession of the property because she had not satisfied the conditions established under the trust. As stated in his petition to the state court, Ocegueda sought an order from the court "to compel the Trustee to provide him with possession and control of the ranch and allow him to occupy it," as the successor beneficiary. His claim of the right to occupy the property depended upon the court concluding that Sell had not satisfied the conditions of the trust. It was the basis for Sell's entitlement to possession of the property, not his, that was put in dispute by Ocegueda's petition.. That is not a claim properly covered by the language of the policy or by the distinction emphasized by the court in *Hobbs Realty*.

More broadly, in interpreting an insurance policy, the "fundamental goal is to give effect to the mutual intention of the parties." *Martin Marietta v. Insurance*

3

*Co. of North America* , 47 Cal. Rptr. 2d 670, 675 (Ct. App. 1995). The rule that we construe ambiguity against the insurer as the drafter of the policy protects "the objectively reasonable expectations of the insured." *Id.* The insurance policy here was not a title policy, and Sell did not insure herself against her own failure to satisfy the conditions to her rights under the trust. I do not believe that either "the mutual intention of the parties" or "the objectively reasonable expectations of the insured" support coverage under a "farmowner's" policy against a claim that the insured did not, in fact, own the farm.

I would affirm.