760 A.2d 1141 (2000)
335 N.J. Super. 33
Marcella POWELL, Plaintiff,
v.
ALEMAZ, INC., Jane Doe and, John Roes, 1-10, (names being fictitious and unknown), Defendants,
v.
Alemaz, Inc., Defendant/Third-Party Plaintiff-Appellant,
v.
Quincy Mutual Fire Insurance Company, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2000.
Decided November 8, 2000.
*1142 Thomas P. Weidner, Princeton, argued the cause for third-party plaintiff-appellant, (Jamieson, Moore, Peskin & Spicer, attorneys for appellant; Mr. Weidner, of counsel and on the brief; Michael G. Petrone, on the brief).
Matthew A. Werbel argued the cause for third-party defendant-respondent, (Methfessel & Werbel, Rahway, attorneys for respondent; Jared E. Stolz, of counsel; Mr. Werbel, on the brief).
Before Judges D'ANNUNZIO, KEEFE and STEINBERG.
The opinion of the court was delivered by KEEFE, J.A.D.
Defendant, third-party plaintiff, Alemaz, Inc. (Alemaz), appeals from the entry of summary judgment in favor of its insurer, third-party defendant, Quincy Mutual Fire Insurance Company (Quincy). The trial judge found that the insurance policy Quincy issued to Alemaz did not cover a claim brought against Alemaz by plaintiff, Marcella Powell (Powell), for damages based on a claim of racial discrimination. We affirm.
The relevant facts are undisputed. Powell filed suit against defendants, Jane Doe and John Roes (rental agent), employees of Alemaz, and Alemaz as their principal, seeking damages for a housing discrimination claim.[1] Powell alleged the rental agent misrepresented an apartment rental amount because she is African American, in violation of federal and state civil rights, fair housing, and anti-discrimination laws. Powell alleged damage to her rights and feelings and sought compensatory, punitive, and injunctive relief.
Alemaz denied the allegations and promptly sought coverage from Quincy under its businessowners liability policy (policy). Quincy denied coverage under the policy, asserting the injury claimed by Powell did not fall within the applicable coverages in the policy, that discrimination was not a "personal injury" as defined by the policy, and that the policy did not provide coverage for willful violations of penal statutes or ordinances. Consequently, Alemaz filed a third-party complaint against Quincy for defense costs and indemnity coverage. Following the third-party complaint, Powell and Alemaz settled the first-party action for $15,000.
Quincy moved for summary judgment and Alemaz cross-moved for summary judgment and to compel discovery. The trial judge granted Quincy's motion. The crux of Judge Pisansky's decision on the motion is the following statement:
[W]hile it is true that [the] coverage section addressing coverage for personal injury is not restricted, the Court notes that on the first page of the policy, the same page that contains the personal injury coverage cost, the policy states that "other words and phrases that appear *1143 in quotation marks have special meaning...." And in the provision regarding personal injury the words personal injury are contained in [quotation] marks; thus, it is evident that regardless of what Alemaz might have thought personal injury meant at the time it purchased the policy, the policy was only intended to cover personal injury as set forth in the definition section of the policy.
On appeal, Alemaz raises the following issues for review:
POINT ITHE COMPREHENSIVE BROAD-FORM BUSINESSOWNERS LIABILITY POLICY PROVIDES COVERAGE FOR DISCRIMINATION CLAIMS VICARIOUSLY ASSERTED AGAINST THE INSURED.
POINT IITHE MOTION JUDGE ERRED IN DENYING ALEMAZ'S CROSS-MOTION TO COMPEL DISCOVERY AND PREMATURELY GRANTED SUMMARY JUDGMENT.
Alemaz's argument presented in Point II, that the trial judge erred in deciding the question of coverage without further discovery, is without merit and does not require discussion. R. 2:11-2(e)(1). The interpretation of the insurance policy is one of law. The discovery requested by Alemaz was not reasonably aimed at assisting the trial court in that endeavor. Although we disagree with Alemaz's argument presented in Point I, the issue requires discussion to explain our reason for affirming the judgment under review.
The following policy provisions are relevant to the analysis of that issue:
BUSINESSOWNERS LIABILITY COVERAGE FORM
Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing insurance.
The word "insured" means any person or organization qualifying as such under SECTION CWHO IS AN INSURED.
Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION FLIABILITY AND MEDICAL EXPENSES DEFINITIONS.
A. Coverages
1. Business Liability
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.
...
b. This insurance applies:
....
(2) To:
(a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
....
B. Exclusions
1. Applicable to Business Liability Coverage
This insurance does not apply to:
....
p. "Personal injury" or "advertising injury":
....
(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;[2] *1144 ....
F. Liability and Medical Expenses Definition
....
10. Personal Injury means injury, other than "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.
Alemaz argues the motion judge erred in interpreting the language as clear and in disregarding Alemaz's reasonable expectations. Specifically, Alemaz asserts that due to the broad coverage the policy provides and the absence of any exclusion for discrimination claims, the average business owner would reasonably expect coverage for plaintiff's claims stemming from damage to her individual rights and feelings. Alemaz also asserts that the broad array of intentional torts commonly encountered by business owners and delineated within the policy lead to the conclusion that it is reasonable for an insured to expect to be covered for claims of racial discrimination.
To determine whether there is coverage, the complaint must be laid alongside the policy, and the inquiry is whether the allegations of the complaint, upon its face, fall within the risk insured against, notwithstanding the actual merit of the claim. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992). When the complaint against an insured falls within the perimeter of coverage, the insurer must provide a defense. Ohio Casualty Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965).
Initially, we must decide whether the policy is clear or ambiguous and whether the reasonable expectations of the insured should be a factor in determining coverage. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255. Generally, the words of an insurance policy are to be given their plain, ordinary meaning. Ibid. When the meaning of a phrase is clear, the reasonable expectations of the insured are a factor used by the court in interpretation, so long as the expectations are not contrary to the policy language. See Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999); see also Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988). The reasonable expectation of the insured should be accorded so far as the language of the policy permits. American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998). That is, the policy should be read in a light most favorable to the insured and consonant with the insured's objectively reasonable expectations. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 337, 495 A.2d 406 (1985); DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979).
Powell's complaint sought, in part, compensatory damages as a result of injury to her "feelings" resulting from racial discrimination at the hands of Alemaz's agents. It is well settled in New Jersey that racial discrimination strikes at the "personhood" of another. See Montells v. Haynes, 133 N.J. 282, 292-93, 627 A.2d 654 (1993). Therefore, where as here a claimant seeks compensatory damages for emotional distress damages, the claim is viewed as one for personal injuries. Section *1145 A.1.b.(2)(a) of the policy issued by Quincy provides coverage for, "`personal injury' caused by an offense arising out of [Alemaz's] business." Further, it would be clear to an insured, such as Alemaz, that coverage would not be excluded under that paragraph because it did not result from any of the activities described in the concluding phrase of subparagraph (a). Nonetheless, Alemaz is clearly put on notice at the outset that various provisions of the policy "restrict coverage," and accordingly the insured is instructed to consult the definition section of the policy when, "words and phrases [are used] in quotation marks," to ascertain their "special meaning." The phrase "personal injury" is used in quotation marks in the section of the policy concerning "COVERAGES." Therefore, Alemaz was required by the plain language of the policy to consult the definition of that phrase in Section F of the policy, the definition section.
Addressing that definition, Alemaz contends that the broad array of intentional torts mentioned in the definition of "personal injury" are those commonly experienced by business owners, and specifically those identified in F.10.c. with respect to landlords, such as Alemaz. Alemaz reasons that because racial discrimination is recognized in this State as a personal injury and may foreseeably arise out of a landlord's rental operations, coverage for such claims by potential tenants is objectively reasonable. Therefore, according to Alemaz, it follows that subparagraph c. must be interpreted to achieve those expectations. Quincy, on the other hand, contends that the policy, at best, affords coverage for claims based on racial discrimination only if the claim arose out of a possessory interest in the property. Thus, according to Quincy, Powell's claim is not covered because she had not yet become a tenant, nor did she have any other possessory interest in the apartment in question.
To support its interpretation of the policy, Alemaz cites Gardner v. Romano, 688 F.Supp. 489 (E.D.Wisc.1988). In Gardner, the plaintiffs, who were also prospective tenants, brought an action against an apartment owner and manager to recover for racially motivated housing discrimination. Id. at 490-91. Plaintiffs sought compensatory and punitive damages for injuries, including humiliation, embarrassment, and mental anguish resulting from the agent of the apartment owner's refusal to rent an apartment to them. Id. at 490. The insured apartment owner and manager argued they should have been indemnified by their insurer because the policy provided coverage for enumerated personal injuries. Ibid. The State Farm policy provided:
personal injury means injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business:
....
c. wrongful entry or eviction, or other invasion of the right of private occupancy.

[Ibid. (emphasis added).]
The insured relied upon the phrase, "other invasion of the right of private occupancy," to provide coverage. Id. at 492. State Farm argued, however, that the quoted clause was clear in that it encompassed only claims for discrimination stemming from possessory interests. The court held that the phrase was not so much ambiguous as it was vague and ruled for the insureds. Id. at 492-93. It observed:
If State Farm's interpretation were to be accepted, the phrase "other invasion of the right of private occupancy" would add no meaning to the policy provision. The meanings suggested by State Farm are already included in the previous phrase, "wrongful entry." Yet, every phrase in a contract is presumed to have some meaning, so the court must reject State Farm's interpretation.

[Id. at 492.]
See State Farm Fire & Casualty Co. v. Westchester Investment Co., 721 F.Supp. *1146 1165 (C.D.Cal.1989) (where State Farm made the same argument, under the same factual circumstances, and the same policy language, and the court also found coverage); See also Clinton v. Aetna Life and Surety Co., 41 Conn.Supp. 560, 594 A.2d 1046 (1991) (interpreting the same language in another insurance company's policy in favor of the insured).
Courts, however, have not been of one mind in the interpretation of the same policy language used by State Farm and other insurers providing coverage to owners of residential rental property. In Brunzelle v. State Farm Fire & Casualty Co., 699 F.Supp. 167 (N.D.Ill.1988), the court refused to apply the rational of Gardner v. Romano, supra, although plaintiffs were also prospective tenants and the policy language was the same. The court analyzed the key wording of the policy as follows:
"Other invasion of the right of private occupancy" is simply part of a more complete definition of "personal injury," following directly on the heels of "wrongful entry or eviction." Ejusdem generis principles draw on the sensible notion that words such as "or other invasion of the right of private occupancy" are intended to encompass actions of the same general type as, though not specifically embraced within, "wrongful entry or eviction." Those two terms have commonly understood meanings. Absent a catch-all phrase such as "or other invasion of the right of private occupancy," an insurer could resist coverage for actions that did not fit within those precise meanings, yet would clearly seem within the same class of conduct intended to be insured against. Then a court confronted with such resistance would be forced to choose between denying coverage or bending the "wrongful entry or eviction" language out of shape to provided the insured with coverage.
....
Where Brunzelle (and for that matter Gardner) err in urging ambiguity of the Policy provision is in failing to give full and normal content to the word "right." In normal English (or at least normal legal English, which may be but is not necessarily the same), a "right" is a legally enforceable claim of one person against another. (citation omitted). Unquestionably Martin had no "right" of "private occupancy"no "right" to occupy the apartment she applied for. Though she was entitled not to be discriminated against in her application, that is not at all the same as a "right" to occupy: an enforceable claim to occupancy (to the exclusion of Brunzelle or anyone else).
[Brunzelle, supra, 699 F.Supp. at 170.]
Other courts have agreed with the Brunzelle court's analysis of the very same language. Bernstein v. North East Insurance Co., 19 F.3d 1456 (D.C.Cir.1994); Boston Housing Auth. v. Atlanta International Insurance Co., 781 F.Supp. 80 (D.Mass.1992).
We find it difficult to disagree with the logic of the Brunzelle court. However, we need not choose between the conflicting interpretations of the language used by the insurers in the foregoing cases. The policy language used by Quincy in the subject policy is different and the difference is significant. In contrast to the language used in subparagraph c. of the policies in the Gardner line of cases, the language in subparagraph c. of the Quincy policy bears repeating:
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies,....

[(emphasis added).]
As the Gardner court observed, the language contained in subparagraph c. of the State Farm policy was standard language used in the industry. Gardner, supra, 688 F.Supp. at 492. It is, therefore, noteworthy that the businessowners liability coverage *1147 form used by Quincy is under a copyright obtained by Insurance Services Office, Inc. (ISO), an organization formed for the purpose of developing standardized policy language for the insurance industry. The ISO copyright is dated 1992, one year after the last reported case we have been able to find through our research of cases interpreting the language used in the Gardner line of cases. Although there is no evidence in the record explaining why the language of subparagraph c. was changed, it is reasonable to assume that it was done to avoid issues such as were presented in Gardner, supra, and its progeny.
In our view the emphasized language in the Quincy policy avoids the ambiguity that arguably existed in the language previously used in similar policies. By removing the word "other" from the definition and adding the phrase, "that a person occupies," to the definition, it can no longer be seriously argued that the phrase, "or invasion of the right of private occupancy," includes actions for personal injuries arising from racial discrimination to prospective tenants. Support for our interpretation of the current language used by Qunicy and other insurers using this standardized language is found in the same Circuit that decided Gardner. See United States v. Security Management Co., et als., 96 F. 3d 260 (7th Cir.1996). There, the court was called upon to decide whether a policy issued by Aetna Casualty and Surety Company (Aetna) to Security Management covered claims by the intervenor plaintiffs who were "testers" and claimed discrimination in their efforts to obtain apartment rentals. Id. at 263. The District Court, apparently following Gardner, found that the language of subparagraph c. was vague and ordered Aetna to defend Security Management. Id. at 264. The Circuit Court disagreed, stating:
We believe that a reasonable insured would read the language as excluding cases where the aggrieved individual was not possessed of an existing right of private occupancy.

[Id. at 265.]
....
The actual language of the policy, ..., involves the more narrow right "of" private occupancy and all of the parties agree that the testers did not hold a right of private occupancy at the time of the alleged discriminatory conduct.

[Id. at 266.]
Principles of law urging liberal interpretation of policy language in favor of coverage do not permit what has been termed the, "perversion of language or the exercise of inventive powers to create ambiguities where they do not fairly exist." National Surety Co. v. Allstate Insurance Co., 115 N.J.Super. 528, 534, 280 A.2d 248 (Law Div.1971) (quoting James v. Federal Insurance Co., 5 N.J . 21, 24, 73 A.2d 720 (1950)). An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants. Rather, both interpretations must reflect a reasonable reading of the contractual language. Alemaz's argument is premised on case law involving language not used by Quincy, and in any event, not supported by a reasonable reading of the contractual language actually employed. A court cannot rewrite the contract for the parties. Middle Dept. Insp. Agency v. Home Ins. Co., 154 N.J.Super. 49, 54, 380 A.2d 1165 (App.Div.1977), certif. denied, 76 N.J. 234, 386 A.2d 858 (1978).
Affirmed.
NOTES
[1] Jane Doe and John Roes were not identified.
[2] While Quincy cited this exclusion as one of the reasons for denying coverage, none of the statutes plaintiff claimed Alemaz's agents violated are penal statutes. Further, there is no evidence in the record that Alemaz's liability is other than vicarious. Accordingly, Quincy's reliance on this paragraph is clearly without merit. See Schmidt v. Smith, 294 N.J.Super. 569, 684 A.2d 66 (App.Div.1996), aff'd, 155 N.J. 44, 713 A.2d 1014 (1998).