┌─────────────────────────────────────────────────────────┐
│              **NOT FOR PUBLICATION WITHOUT THE**               │
│             **APPROVAL OF THE APPELLATE DIVISION**            │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3. │
└─────────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1969-15T3

MANUEL SANCHEZ and
YOLANDA SANCHEZ,

    Plaintiffs-Appellants/
    Cross-Respondents,

v.

NEW JERSEY TURNPIKE
AUTHORITY, PORFIRIO I.
RAMON and MARIA E. RAMON,

    Defendants-Respondents,

and

NEW JERSEY MANUFACTURERS
INSURANCE,

    Defendant-Respondent/
    Cross-Appellant.

_____

        Argued October 17, 2017 – Decided November 16, 2017

        Before Judges Reisner and Hoffman.

        On appeal from the Superior Court of New
        Jersey, Law Division, Middlesex County, Docket
        No. L-8597-12.

        Thomas De Seno argued the cause for
        appellants/cross-respondents.

Gage Andretta argued the cause for respondent New Jersey Turnpike Authority (Chiesa Shahinian & Giantomasi, PC, attorneys; Bruce Ettman, on the brief).

John A. Camassa argued the cause for respondent/cross-appellant New Jersey Manufacturers Insurance Company (Camassa Law Firm, PC, attorneys; Mr. Camassa, of counsel; Christopher M. Brady, on the briefs).

PER CURIAM

Plaintiffs Manuel and Yolanda Sanchez appeal from an order dated December 4, 2015, denying their motion for reconsideration of a September 24, 2015 order, which in effect determined that New Jersey Manufacturers Insurance Company (NJM) did not owe plaintiffs underinsured motorist (UIM) coverage for an automobile accident. NJM filed a protective cross-appeal from an October 23, 2015 order denying its motion for a new trial on damages, claiming errors in the jury instructions.

On plaintiffs' appeal, we vacate the September 24, 2015 and December 4, 2015 orders, and we remand the matter to the trial court for a plenary hearing to decide material factual disputes concerning the coverage issue. NJM failed to perfect the cross-appeal by providing us with all of the pertinent trial transcripts. Without the entire trial record, including the testimony of the damages experts, we cannot determine whether any alleged charging

errors had a clear capacity to produce an unjust result.  See R. 2:10-2.  Accordingly, we dismiss the cross-appeal.

                                    I

In 2011, Manuel Sanchez,[1] a State Trooper, was injured in an auto accident while he was on duty, driving a vehicle owned and insured by the New Jersey Turnpike Authority (the Authority).  The other driver, Porfirio Ramon, had a $15,000 auto insurance policy.  After settling with Ramon for the $15,000 policy limit, plaintiffs sought UIM coverage from the Authority and from Manuel's personal auto insurance policy issue by NJM.  There was no dispute that the NJM policy provided $300,000 in UIM coverage.  A dispute arose as to whether the Authority provided $15,000 or $2 million in UIM coverage.

The dispute was based on the following unusual set of facts.  The Authority was self-insured, but had procured an excess policy from Chartis Claims, Inc.[2] for amounts over $2 million.  Endorsement No. 23 of that policy, which was titled

---

[1] Manuel's wife Yolanda sought per quod damages.  We refer to Mr. and Mrs. Sanchez collectively as plaintiffs.  For clarity, and intending no disrespect, we refer to them individually by their first names.

[2] The Chartis policy indicates that coverage was being provided by "National Union Fire Insurance Company of Pittsburgh, Pa." However, the parties have referred to the insurer as "Chartis" and we will do so as well.

"Uninsured/Underinsured Motorists Coverage Endorsement," could be construed to mean that Chartis was providing UIM coverage for occupants of the Authority's vehicles on an excess basis, and that the Authority was self-insured for $2 million in UIM coverage. The endorsement included the following sentence: "Uninsured/Underinsured Motorists Retained Limit $2,000,000 INSURING AGREEMENT." The Authority's position was that the Chartis policy only covered third-party claims, not UIM claims. The Authority contended that Endorsement No. 23, including the retained limit language concerning UIM coverage, was insurance company boilerplate, which was not applicable to the type of coverage the Authority had purchased from Chartis and should not have been included in the policy.

While the UIM litigation was pending, plaintiffs filed a motion to amend the complaint to add Chartis as a defendant. The assigned motion judge (the first judge) did not decide whether the Chartis policy in fact provided UIM coverage or what amount of UIM coverage the Authority provided. Rather, he reasoned that, even if the Chartis policy included UIM coverage, plaintiffs failed to demonstrate that their damages exceeded $2 million, so as to trigger any "umbrella coverage" the Chartis policy provided. Accordingly, the judge denied the motion because the amendment would have been "futile."

It appears from the record that the language in the Chartis endorsement had created issues in other auto accident cases involving the Authority, concerning the level of the Authority's underlying UIM coverage. At his deposition, the Authority's deputy executive director, John O'Hern, testified that the Authority's self-insured retention limit for UIM coverage was $15,000, but he testified that there was no written documentation setting that coverage limit. O'Hern testified to his understanding that UIM coverage of $15,000 per individual and $30,000 per accident was statutorily required. O'Hern also testified to his understanding that the Authority never had UIM excess coverage from Chartis and Endorsement No. 23 was "a mistake." He noted that section O of the exclusions section of the basic Chartis policy stated that the policy did not apply to the insured's UIM obligation.

O'Hern acknowledged evidence that in two prior cases involving injured State Troopers, the Authority had settled UIM claims for considerably more than $15,000. He testified that in both of those cases, the Authority's initial litigation position had been that its UIM limits were $15,000/30,000. The minutes of the Commission meeting concerning one of the settlements indicate that the plaintiff in that case claimed that he suffered a traumatic brain injury. However, at his deposition, O'Hern also recalled a more recent case in which the Authority had litigated

its obligation to provide UIM coverage and had obtained a Law Division decision holding that its UIM coverage was limited to $15,000. According to O'Hern, that decision arose from a court hearing in which he testified.

On February 15, 2012, the Authority's acting director of law authored a memo indicating that the Authority's limit had always been $15,000, but that the Chartis policy language had created an issue on that point. He recommended that the Authority's Board of Commissioners raise the UIM self-insured limit to $250,000 to adequately protect the Authority's employees. He also recommended asking Chartis to delete the controversial language from its policy. On February 28, 2012, the Commissioners approved that recommendation, voting to change the Authority's UIM self-insured retention limit to $250,000 and authorizing the executive director to ask Chartis to remove Endorsement No. 23 from its policy.[3] According to O'Hern, the Authority's current umbrella policy does not contain a provision for UIM coverage.

Despite knowing that there was an issue over the Authority's self-insured limit, plaintiffs settled with the Authority for $67,000. The settlement agreement recited that it was without prejudice to the Authority's position that at the time of the

_____

[3] The memo and the Commission minutes refer to Endorsement No. "24" but we conclude this is a typographic error.

accident, it only provided $15,000 in UIM coverage, regardless of the terms of any existing excess policy. Plaintiffs then proceeded to trial against NJM, before a second judge.

Shortly before the trial, NJM filed a motion asking the trial court to declare that the Authority's UIM coverage was $2 million, and that NJM's policy was excess to the coverage provided by the Authority. Instead of deciding the coverage issue, the second judge declined to entertain the motion and proceeded with the trial. The jury returned a verdict of $250,000 in damages for Manuel and $50,000 in per quod damages for Yolanda. After the trial, the second judge determined that the Authority's UIM self-insured retention limit was $2 million and that, pursuant to the language of the NJM policy, NJM's coverage was excess to that provided by the Authority. In effect, that determination vitiated the $300,000 jury verdict against NJM.

## II

On this appeal, plaintiffs contend that the language in the Chartis policy was incorrect, and that the language of an excess policy cannot legally determine the insured public entity's underlying coverage limit. The Authority supports plaintiffs' position. The Authority argues, in the alternative, that it had no obligation to provide any UIM coverage and did not include such

coverage in its self-insured retention, or that its UIM obligation was limited to $15,000.

Ordinarily, the interpretation of an insurance policy is a contract question that presents solely a legal issue. See Powell v. Alemaz, Inc., 335 N.J. Super. 33, 37 (App. Div. 2000). However, in this case, where the Authority was self-insured, the issue is not so simple. After reviewing the record, we conclude that there is a material factual issue concerning the Authority's UIM coverage at the time of the 2011 accident. The Chartis policy only provides coverage that is excess to underlying existing coverage. It neither provides primary coverage nor creates any underlying coverage. See Arico v. Twp. of Brick, 281 N.J. Super. 471, 475 (App. Div.), certif. denied, 142 N.J. 515 (1995). Language in the Chartis policy concerning the Authority's amount of underlying UIM coverage might constitute some evidence of that coverage. However, the Chartis policy language cannot not create such underlying coverage if it does not otherwise exist.

There are factual issues concerning how the contested language came to appear in the Chartis policy; whether the Authority negotiated or paid for any UIM or UM coverage from Chartis; or whether Endorsement No. 23, or at least the included language about the retention amount, was simply boilerplate that Chartis included in error. We understand the first judge's

reasoning in denying plaintiff's motion to add Chartis as a party, however, Chartis may have records or employees that can shed light on the coverage issue. If Chartis will not voluntarily produce its information on remand, it may be added as a party for discovery purposes only.

The record also presents factual issues concerning the Authority's policies and its past conduct with respect to providing UIM coverage to persons driving the Authority's vehicles. It is difficult to comprehend how a public agency such as the Authority could have no contemporaneous records defining its self-insured UIM coverage. Because there is no statutory requirement for UIM coverage, it is also unclear whether or how the Authority could provide $2 million in UIM coverage, without a public vote of its Commissioners authorizing that coverage.[4] See N.J.S.A. 17:28-1.1 (requiring auto insurance policies to include UM, but not UIM, coverage); Downey v. City of Elizabeth, 273 N.J. Super. 335, 338-39 (App. Div. 1994) (self-insured public entity need not provide UIM coverage). It is further unclear why the Authority settled UIM claims for amounts so far in excess of what it claimed was its

_____

[4] NJM's appendix contains the minutes of a July 27, 2010 Commission vote authorizing the renewal of the Chartis umbrella policy, but the resolution only refers generally to auto liability excess coverage and makes no mention of authorizing any underlying UIM coverage.

self-insured limit of $15,000. The parties should have the opportunity to present and cross-examine witnesses on the factual issues and the trial court should have the opportunity to gauge their credibility.

In response to our questions at oral argument, the Authority's counsel conceded that an evidentiary hearing was required, while counsel for NJM and plaintiffs insisted that their respective positions should prevail without a hearing. In fairness to the second judge, we acknowledge that none of the parties specifically asked for a hearing in the trial court. However, in view of the amount of money at stake here, and the disputed factual and credibility issues, we conclude that a plenary hearing is required.[5]

Accordingly, we vacate the September 24, 2015 and December 4, 2015 orders, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

Dismissed in part, vacated in part and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In light of our disposition of the appeal, we do not address the parties' additional arguments.