**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3221-18T2

M & M CONSULTING
SERVICES, LLC,

     Plaintiff-Appellant,

v.

DANITOM DEVELOPMENT, INC.,
NOVA PROPERTIES OF NEW
JERSEY, LLC, THOMAS P.
CRITELLI,

     Defendants-Respondents.

_____

DANITOM DEVELOPMENT, INC.,
NOVA PROPERTIES OF NEW
JERSEY, LLC,

     Third-Party Plaintiffs,

v.

CHARLES DONATO, TANYARD
ROAD ASSOCIATES, LLC,
EARTH ENGINEERING, LLC,

     Third-Party Defendants.

_____

EARTH ENGINEERING, LLC,

      Fourth-Party Plaintiff,

v.

STORMWATER FACILITIES
MANAGEMENT,

      Fourth-Party Defendants.
_____

Submitted April 30, 2020 – Decided July 9, 2020

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0064-16.

Lauletta Birnbaum, LLC, attorneys for appellant (Gregory A. Lomax and Sarah Allison Cohen, on the brief).

Hagner & Zohlman, LLC, attorneys for respondents (John A. Zohlman, III and YooNieh Ahn, on the brief).

PER CURIAM

Plaintiff M&M Consulting Services, LLC, (M&M) appeals[1] the March 1, 2019 orders that granted partial summary judgment to defendants, Danitom

_____

[1] M&M states that third-party defendants Tanyard Road Associates, LLC (Tanyard) and Charles Donato (Donato) join it in submitting the appellate brief. Since neither Tanyard nor Donato filed a notice of appeal, however, they are not appellants herein.

A-3221-18T2

Development, Inc. (Danitom), Nova Properties of New Jersey, LLC (Nova) and Thomas P. Critelli (Critelli) (collectively defendants), dismissing M&M's breach of contract claim and denied M&M's motion for partial summary judgment on the same count. The central issue is whether the parties' Site Management Agreement (SMA), as amended, required M&M to be paid within thirty-six months or whether defendants' obligation to pay M&M did not begin until Danitom paid off its mortgage loan to its lender, Amboy Bank (Amboy). We reverse because there are genuine issues of fact that are material, which preclude the summary judgment orders.

I.

A.

In April 2010, third-party defendant Tanyard Road Associates, LLC (Tanyard) contracted to sell Danitom three development lots located in Deptford for $875,000. Two deposits totaling $50,000 were to be paid to Danitom's title insurance company upon the achievement of certain benchmarks, with the balance of $825,000 to be paid at the closing. Once Danitom finished preparing the lots, they would be sold to Ryan Homes.

In October 2010, defendant Danitom signed the SMA with M&M "to provide consulting and site management services." M&M was to be paid as follows:

> 3. As and for consideration of the services to be provided by M&M, Danitom shall pay M&M the sum of $250,000 in the following manner:
>
> A. $50,000 immediately upon Danitom's purchase of the aforesaid Property;
>
> B. The balance of $200,000 shall be paid without interest at a rate of $5,000.00 per lot upon the sale of each of the first forty [40] market rate finished lots to Ryan Homes or any other third-party purchaser. Such payment shall be payable from the proceeds of such sales. Danitom shall provide not less than one [1] business day advance notice of all such lot sales, which notice may be given in writing, orally, telephonically or by email;
>
> C. Notwithstanding the payment schedule above, M&M shall be paid all fees, regardless of the number of lots sold, within [thirty-six] months from Danitom's purchase of the aforesaid Property.
>
> . . . .
>
> 10. Danitom agrees upon the sale of each market rate finished lot, it shall request Ryan Homes, after payment of such consideration as may be required to secure the release of such lot from the lien of any mortgage on the Property, the sum of $5,000.00 shall be paid to M&M from the proceeds of sale, prior to any payment to Danitom.

4

(emphasis added.)

Danitom assigned the SMA to defendant Nova.

On September 2, 2011, M&M, Danitom and Nova executed an Amendment to the Site Management Agreement (ASMA). Under the ASMA, M&M was to be paid $300,000. Of this, $50,000 was to be paid immediately. Then $50,000 "shall be paid at the rate of $5,000.00 per lot upon the sale of the 41st through 50th market rate finished lots to Ryan Homes or any other third party purchaser." (emphasis added). The remaining $200,000 "shall be paid at the rate of $5000.00 per lot upon the sale of each of the first [forty] market rate finished lots to Ryan Homes or any other third party purchaser" except $50,000 of this would not be paid until there was a "final and unappealable disposition" of a specific, but non-related lawsuit. (emphasis added).

Danitom claimed it had unexpected costs associated with remediating the lot sites. It defaulted on its mortgage loan with Amboy and the bank took title to the remaining lots by consent in lieu of foreclosure. Ryan Homes also terminated its contract because Danitom could not complete the site remediations.

M&M received $50,000 under the contract but never received any other payments. It filed a complaint against defendants Danitom and Nova in January

5

2016, alleging breach of contract, breach of implied contract, unjust enrichment/quantum meruit, fraudulent inducement and misrepresentation, and a book account action.[2] Defendants filed a counterclaim against M&M for breach of contract and a third-party complaint against three other parties: Charles Donato, the authorized member of M&M, Tanyard, and Earth Engineering, Inc. Plaintiff amended its complaint to add defendant Thomas Critelli, president of Danitom. (neither the motion nor pleading is included).

On July 26, 2018, the trial court granted in part and denied in part M&M's motion for summary judgment, dismissing all of defendants' counterclaims except for the breach of contract count. It also denied summary judgment to M&M on its breach of contract count. The trial court found the SMA was ambiguous because paragraph 3C appeared to require M&M to be paid after three years regardless of whether Amboy was paid. However, because paragraph ten of the SMA referenced liens, it was reasonable to interpret it to mean M&M would not be paid until each lot was released from the Amboy lien. The court found "it was the clear intent of Danitom and its principal that M&M would not be paid until . . . Amboy . . . was paid." The court did not think it

---

[2] We rely on the trial court's description because most of the pleadings were not included in the appendix.

made sense Danitom would pay M&M whether or not the mortgage with Amboy was satisfied. The court found M&M's construction "is not typical in these types of contracts."

In November 2018, the trial court granted reconsideration in part, dismissing defendants' last counterclaim. After that, both M&M and defendants filed motions for partial summary judgment on the breach of contract count. Defendants' motion was granted on March 1, 2019, and this count of M&M's complaint was dismissed.

The trial court determined the contract was ambiguous because paragraphs 3C and 10 were in conflict. The trial court found that Donato and Critelli "had a discussion and a meeting of the mind[s] that M&M would be paid after Danitom's lender was paid." "[T]he idea was that the $5000 would be paid from the proceeds of the sale after the bank released its lien on the property as each finished lot was sold." Ibid. Once there was a profit, then M&M would be paid. The "condition precedent" was that Danitom would pay its mortgage with Amboy and sell the lots. Danitom never received any money because all of it was disbursed directly to Amboy.

The court determined the "objective intent of the parties" was that the mortgage needed to be satisfied before payment to M&M under paragraph 3B

7

and 3C was triggered. Any other interpretation was contrary to "common sense."

On appeal, M&M argues

A. . . .

B. THE COURT ERRED IN DENYING THE DONATO PARTIES' CROSS-MOTION FOR SUMMARY JUDGMENT.

C. ALTERNATIVELY, THE COURT ERRED IN GRANTING THE DANITOM PARTIES' MOTION FOR SUMMARY JUDGMENT.

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). We are required to "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, [were] sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

M&M contends it was entitled to payment of the contracted amount based on paragraph 3C because more than three years had passed since Danitom purchased the lots. Defendants argue that paragraph 3B's reference to the "proceeds of sale" and paragraph ten's reference to "liens" means that the requirement to pay M&M was not triggered until Amboy was paid.

"The interpretation or construction of a [written] contract is usually a legal question for the court[.]" Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 313 (App. Div. 2004). "The court makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). "If the terms of a contract are clear, we must enforce the contract as written and not make a better contract for either party." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999).

A contract term is ambiguous when it is susceptible to more than one reasonable interpretation. See Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000). "[A] court may look to extrinsic evidence as an aid to interpretation" where there is ambiguity. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). Interpretation of a contract should

not be decided on summary judgment when "there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000).

We agree with the trial court the contract language is ambiguous. The trial court reasonably concluded that paragraphs 3C and 10 are in conflict because one paragraph appears to require payment to M&M after three years and the other appears first to require repayment of Amboy.

In interpreting a contract, the court must "discern and implement the common intention of the parties." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). Where there is ambiguity, the parties may present extrinsic evidence about the "facts and circumstances surrounding the execution" of the contract to ascertain its meaning. Great Atl. & Pac. Tea Co., 335 N.J. Super. at 501.

Because of the ambiguity and the need for the parties to present testimony, the trial court should not have determined the facts and circumstances of the contracting based on depositions and certifications. For instance, the court found Donato and Critelli had a meeting and agreed how M&M would be paid. This is Danitom's version of the facts, not M&M's. Donato stated Critelli told him he would be paid $5000 per lot. He said he was not aware "all the proceeds" would go to Amboy.

The trial court found M&M's construction of the contract did not make sense and "is not typical in these types of contracts." However, Donato testified in his deposition that "normally, the bank takes 125 percent or 110 percent of what's owed. There's always something left . . . . I've done a lot of these jobs and not 100 percent of proceeds go to the bank." The court made a finding that M&M agreed to be paid when and if Danitom made money, but Donato testified that he assumed he would be paid $5000 at each closing. The trial court concluded the only "reasonable" interpretation of the contract was that Amboy would be paid first and then M&M could be paid, but that did not address paragraph 3C. The ASMA no longer used the phrase "from the proceeds of sale" but "upon the sale of each of the first . . . market rate finished lots." The trial court did not explain whether the parties' change in language in the ASMA signaled anything about the parties' intentions. A reasonable interpretation could be it was the "sale" of the lots that triggered the obligation, not the "proceeds."

On summary judgment, the trial court cannot weigh or evaluate the evidence. Where there are genuine issues of material fact—as there are here—

11

the court should have denied summary judgment.  We therefore reverse the

March 1, 2019 orders.[3]

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3]  We were not able to establish from the appendices whether the remaining counts of M&M's complaint were dismissed prior to this appeal.  If they were not, M&M should have requested leave to appeal.

A-3221-18T2