**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0924-22

FLORHAM VILLAGE, LLC,

     Plaintiff-Appellant,

v.

PURE LIFESTYLE LLC, d/b/a
PURE BARRE,
ELIZABETH BILLMEIER,
and KYLE KRAUSE,

     Defendants-Respondents.

_____

Argued October 11, 2023 – Decided November 16, 2023

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0794-21.

Joshua Beinhaker argued the cause for appellant (Beinhaker & Beinhaker, LLC, attorneys; Joshua Beinhaker, on the brief).

John Motta argued the cause for respondents.

PER CURIAM

Plaintiff Florham Village, LLC, appeals from an October 14, 2022 Law Division order granting summary judgment on its claim defendants Pure Lifestyle, LLC, Elizabeth Billmeier, and Kyle Krause breached the parties' lease by failing to pay rent and associated fees. Plaintiff contends the court miscalculated the amount due under the lease when it awarded defendants to pay $74,519.37, exclusive of attorney's fees and costs. We affirm in part and remand in part for the court to address a disputed insurance bill.

We glean the following facts from the motion record. Defendant Pure Lifestyle is the assignee of a commercial lease which required it to pay plaintiff monthly rent and associated costs. Defendants Elizabeth Billmeier and Kyle Krause are personal guarantors of Pure Lifestyle's obligations under the lease.

From May 1, 2020, to June 1, 2021, defendants failed to pay plaintiff $86,966.00 in rent, $2,570.47 in maintenance fees, and $2,504.28 in taxes, amounts which are not in dispute. The parties also do not dispute defendants paid a $21,000 security deposit to be credited toward any outstanding amounts due under the lease.

The dispute central to this appeal is the amount of late fees defendants owe plaintiff under section 3(b) of the lease. That provision provides:

> [I]n the event that rent, percentage rent or additional rent is received by the [plaintiff] on a date later than

A-0924-22

> five (5) days after the date on which its due, [defendants] shall pay a monthly late payment charge of four (4%) percent of the amount due in arrears [sic] shall accrue as additional rent, and shall become immediately due and payable.

Before the court, plaintiff argued section 3(b) permitted it to charge defendants four percent of the total outstanding amount due, thereby compounding defendants' arrears by four percent each month of non-payment, including ten months after defendants were no longer responsible for rent. According to plaintiff's calculations defendants owe it $82,628.94 in late fees, $1,096.42 in outstanding insurance payments, plus the undisputed rent arrears, taxes, and maintenance for a total of $154,766.11.

Defendants disagreed and argued section 3(b) only allowed for a monthly fee of four percent to be levied for any late payment for the month defendants were in default. Under defendants' calculation, they maintain they owe plaintiff four months of late fees at $241.56; and ten months of late fees at $251.24, representing four percent of each month's unpaid rent, totaling $3,478.64. After the security deposit is applied, defendants claim they owe plaintiff $74,519.37, which consists of the outstanding unpaid rent, late fees, and the undisputed taxes and maintenance, exclusive of the $1,096.42 insurance payment to which it contends it has no obligation.

3

With respect to the disputed insurance payment, section 10 of the lease requires defendants to pay plaintiff "once annually [its] proportionate share . . . of the cost of the premiums for fire and extended coverage insurance." The lease does not provide an amount for this payment other than stating defendants' proportional share is 3.6%.

In an oral decision, the judge rejected plaintiff's arguments and noted he was not "prepared to say that $86,000 in rent . . . results in $82,000 in late fees. . . . I am not sure that that [i]s what the lease really says, but I think that's an unconscionable interpretation [even] if you read it that way."[1] Further, the judge stated, "had [the late fees] been intended to be compounded, that word should have been used."

Instead, the judge agreed with defendants' interpretation of section 3(b) and found "four percent of the amount due" referred to four percent of the amount due "per month," rather than four percent of the total amount in arrears.

---

[1] As best we can discern, it appears plaintiff reached the $82,628.94 figure by compounding the amount in arrears per month from May 2020 to May 2022. Specifically, according to plaintiff, defendants owed $29,676.82 in late fees from May 2020 to June 2021, and $52,952.12 from July 2021 to May 2022. Before the court, however, defendants' counsel argued late fees charged from July 2021 to May 2022 were improper because defendants' franchisor paid rent to plaintiff beginning in July 2021. We are satisfied any error in plaintiff's calculation of late fees during either period does not affect our interpretation of section 3(b), as detailed at pages 9-11 of this opinion.

4

As such, the judge entered judgment for plaintiff in the amount of $74,519.37, exclusive of attorney fees and costs, consistent with defendants' computation. The court did not address defendants' obligation to pay insurance under section 10 or the precise amount due under that provision. In a subsequent order, on November 1, 2022, the court awarded plaintiff $15,507.00 in counsel fees and $871.00 in costs.

Before us, plaintiff argues the court misinterpreted the plain language of the lease and miscalculated the late fees owed by defendants. Plaintiff asserts the late fee provision exists to incentivize prompt payments and to protect plaintiff from unpredictable damages stemming from late payments. Plaintiff also asserts the language of the provision is clear and unambiguous, and, as such, the court should have simply enforced the terms of the lease. Plaintiff also contends the court "missed a line item," or miscalculated the amount owed under the lease, namely, the $1,096.42 insurance payment. We disagree with plaintiff's interpretation of section 3(b) but remand for the court to address defendants' obligation to pay the disputed insurance payment under section 10.

Additionally, relying on N.J.S.A. 12A:2A-108, defendant challenges the fee award, arguing for the first time on appeal the court erred in awarding counsel fees to plaintiff. Defendant argues the court found the late fee provision,

A-0924-22

as argued by plaintiff, to be unconscionable and the court should have therefore awarded attorney's fees to defendant rather than plaintiff. As discussed below, we reject defendant's argument with respect to counsel fees.

We review summary judgment decisions de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). In our de novo review, we determine whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (quoting Friedman v. Martinez, 242 N.J. 449, 471-72 (2020)).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman, 242 N.J. at 472 (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). The key inquiry is whether the evidence presented is "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Rozenblit v. Lyles, 245 N.J. 105, 121 (2021).

A-0924-22

"The interpretation or construction of a [written] contract is usually a legal question for the court." Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 313 (App. Div. 2004). "The court makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). A contract term is ambiguous when it is susceptible to more than one reasonable interpretation. See Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000). The court should interpret contract terms "so as to avoid ambiguities, if the plain language of the contract permits." Stiefel v. Bayly, Martin and Fay of Conn., Inc., 242 N.J. Super. 643, 651 (App. Div. 1990). Interpretation of a contract should not be decided on summary judgment when "there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000).

If contractual terms are clear, "[courts] must enforce the contract as written." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). Further, the contract is to be interpreted "'in accord with justice and common sense.'" Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

A-0924-22

If, however, the terms of a contract are ambiguous, courts "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (internal citations omitted). Additionally, "[t]he judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

Importantly, "[a] contract is unenforceable if its terms are manifestly unfair or oppressive and are dictated by a dominant party." Howard v. Diolosa, 241 N.J. Super. 222, 230 (App. Div. 1990) (citing Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App.Div.1955)). Additionally, when considering a liquidated damages clause, such as a late fee provision in a commercial lease, courts will consider if the clause "is reasonable under the totality of the circumstances." Metlife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P., 159 N.J. 484, 495 (1999). In evaluating the totality of the circumstances and the reasonableness of the liquated damages provision, courts consider: (1) the difficulty in assessing contract damages, (2) the parties' intentions, (3) actual damages sustained, and (4) the parties' bargaining power. Ibid. (citing Wasserman's Inc. v. Middletown, 137 N.J.238, 250-54 (1994)).

A-0924-22

In commercial contracts between "sophisticated parties," liquidated damages provisions are considered "presumptively reasonable and the party challenging the clause bears the burden proving its unreasonableness." Id. at 496. In Metlife, the court considered a commercial loan agreement and found a "five percent late charged assessed against each delinquent payment" was reasonable as the agreement "involved an arms-length, fully negotiated transaction between two sophisticated commercial parties, each represented by counsel." Id. at 488, 500. The court also noted the late charge was "well within the normal industry standard and was intended to compensate for the administrative costs associated with servicing delinquent loan payments." Id. at 500.

Against these legal principles and standard of review, we affirm that portion of the court's October 14, 2022 related to the late fee issue substantially for the reasons stated in the judge's oral decision.[2] In doing so, we reject

---

[2] We note plaintiff's notice of appeal listed only the October 14, 2022 order which rendered this appeal interlocutory as that order did not constitute a final judgment in light of the court's subsequent November 1, 2022 order. Because the matter was fully briefed and otherwise ready for disposition, we exercise our discretion to rule on the appeal's merits. Caggiano v. Fontoura, 354 N.J. Super. 111, 125 (App. Div. 2002).

A-0924-22

plaintiff's argument the language in section 3(b) permitted plaintiff to charge defendants a four percent monthly fee of the entire amount in arrears.

While section 3(b) is hardly a model of clarity, as the judge noted, the provision does not explicitly provide that arrears shall compound by four percent each month. We agree with the judge that if the parties intended to compound late fees, the word "compounded . . . should have been used." Absent use of such language, section 3(b), when read in context, permits plaintiff to charge defendants a monthly late fee of four percent of that month's rent. See Kieffer, 205 N.J. at 223 (noting courts do not rewrite contracts "better than or different from" the one existing between the parties).

Further, the court's decision interprets section 3(b) rationally and in keeping with the purpose of late fee provisions which is to require a defaulting tenant to compensate the landlord for any loss caused by the late payment and the difficulties of proving such a loss. See Westmount Country Club v. Kameny, 82 N.J. Super. 200, 205 (App. Div. 1964) (noting "liquidated damages is the sum a party to a contract agrees to pay if he breaks some promise," the amount of which the parties "arrived at by a good faith effort to estimate in advance the actual damage" that will stem from the breach); see also Restatement (Second) of Contracts, § 356 cmt. b (1981) (discussing liquated damages as "[t]he amount

fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach.").

If we were to accept plaintiff's interpretation, defendants would be obligated to pay $82,628.94 in late fees with respect to $86,966.00 in unpaid rent, a nearly one-hundred-percent charge. Nothing in section 3(b) supports such a draconian result. See Barila, 241 N.J. at 616 ("the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written and accord to the language a rational meaning in keeping with the express general purpose." (quoting Owens v. Press Publ'g Co., 20 N.J. 537, 543 (1956))). As the court correctly explained, a provision which permits a nearly one-hundred percent late fee is unconscionable and unreasonable. See Rosen v. Smith Barney, Inc., 195 N.J. 423, 427 (2008) ("a contractual term fixing an unreasonably large, liquidated damage amount is a penalty, which is unenforceable on grounds of public policy." (citing Metlife, 159 N.J. at 498-99)).

We reject, however, defendants' challenges to the fee award on the following grounds. First, defendants never filed a cross appeal of the court's October 14, 2022 or November 1, 2022 orders, contrary to Rule 2:3-4; see also Semexant v. MIL Ltd., 252 N.J. Super. 318, 322-23 (App. Div. 1991). We also

note from our review of the record, defendants did not raise before the court they are entitled to fees because of the unconscionability of the late fee provision before the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959))). Neither exception applies here, and we note defendants have cited no authority for the proposition N.J.S.A. 12A:2A-108, a section of the Uniform Commercial Code, applies to a lease agreement related solely to real property, nor have they provided a substantive basis to challenge the court's fee award.

We are constrained, however, to remand for the court to address one narrow issue. Specifically, we direct the court to make necessary findings and legal conclusions with respect to defendants' obligation under section 10 as it does not appear the court addressed that issue.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12